UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

CLAUDE A. STATEN,

                                Plaintiff,

-against-

THE CITY OF NEW YORK

                                Defendant.
------------------------------------------------------------x

**DECLARATION OF CAPTAIN RICHARD D. GUBITOSI**

12 Civ. 3544 (ER)

       **Richard D. Gubitosi**, declares under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

       1.    I am the Commanding Officer of the New York City Police Department's, ("NYPD") Performance Analysis Section. I have held this post since August of 2013. Previously, I served as the Commanding Officer in the Office of the Deputy Commissioner of Trials for 3.5 years. In total, I have been employed by the NYPD for seventeen years.

       2.    I submit this declaration in support of defendant's Motion for Summary Judgment in the above-captioned matter based upon my review of the books and records of the NYPD, as well as conversations with NYPD employees.

       3.    In my capacity as the Commanding Officer of the Performance Analysis Section, I am responsible for overseeing the NYPD's Performance Monitoring Unit ("PMU"), which is tasked with identifying and proactively monitoring members of the service whose records indicate that they have varying degrees of either disciplinary issues, performance issues, or civilian complaints, with the goal of improving performance and/or behavior through increased evaluation, intervention, and training.

4. When a member is identified, based on his/her performance, discipline, or civilian complaint history, requiring formal monitoring, an in-depth review of the members career is conducted, and the member is placed into one of three monitoring programs, based on that review, and in certain cases, via recommendations of the member's supervisors.

5. Level- I Monitoring is command level and is the lowest level of the three monitoring programs. A member on Level- I Monitoring is counseled by his/her Commanding Officer, regarding their performance, discipline, or civilian complaint history, and provided steps for improving deficiencies within these areas. A member on Level -I Monitoring is further advised of the consequences of not improving their work performance, which may in the future include an elevation in the members monitoring status.

6. A member placed on Level- I Monitoring may be eligible for removal from the monitoring program after twelve months if the officer's performance and/or behavior improves. If the members performance does not improve, the member may remain either on Level- I Monitoring for an extended period of time, on a case by case basis, or be upgraded to Level- II Monitoring, as necessary.

7. Level- II Monitoring is the intermediate monitoring program. Members placed in Level- II Monitoring are evaluated quarterly, closely supervised, and recommended for additional training where necessary. A member placed on Level -II Monitoring may not be promoted without first appearing before NYPD's Career Advancement Review Board ("CARB"), a panel consisting of the Deputy Commissioner, Personnel (Chairperson), and two (2) Bureau Chiefs who review officers' employment history to determine if a member on Level- II Monitoring merits promotion. Further, where appropriate, the NYPD's Medical Division may conduct home visits of members on Level- II and Level-III Monitoring.

8. A member placed on Level-II Monitoring may be eligible for removal from the monitoring program after eighteen months if the member's performance and/or behavior improve. If the member's performance and/or behavior does not improve, the member may remain on Level-II Monitoring for an extended period of time, on a case by case basis, or be elevated into Level-III monitoring, as necessary.

9. Level-III Monitoring is the strictest form of monitoring. Level-III Monitoring is reserved for members with extensive disciplinary histories, who have not demonstrated improvement in response to past intervention and discipline. Members on Level-III Monitoring are not eligible for promotion, but upon completion of Dismissal Probation, must be reviewed by CARB prior to being promoted within the NYPD.

10. Dismissal Probation, a form of Level-III Monitoring, is imposed in conjunction with a penalty of dismissal after a member is found guilty of charges preferred against the member by the NYPD, by either a plea of guilty or after guilty findings after Department trial.

11. PMU maintains case history files of all members who are placed on Level-II or Level-III Monitoring, documenting those members' employment and disciplinary history.

12. In connection with the above-captioned case, I reviewed the case history files for Sergeant Kevin Kavanagh, Sergeant Stephen Wheeler, and Police Officer Claude Staten, plaintiff in this matter.

**A.   Kevin Kavanagh**

13. Police Officer Kevin Kavanagh ("Kavanagh") was a candidate on a promotional civil service list of eligibles for the rank of Sergeant from Examination Number 6513. He was assigned List Number 199 on that civil service list of eligibles.

14. A review of Kavanagh's PMU file reveals that Kavanagh was placed in Level II monitoring on December 10, 2007, following his plea of guilty to one set departmental

- 3 -

charges and specifications for harassing and striking a person in the head with an ASP baton while being unfit for duty. A copy of a memorandum provided to the CARB in or about January 2009, which details Kavanagh's employment history is annexed hereto as Exhibit A.

15. My review of Kavanagh's file further reveals that between his date of appointment on February 29, 2000, and his CARB interview on January 7, 2009, Kavanagh recorded 117 arrests while averaging 3.36 non-line of duty sick days per year and 0 line of duty sick days per year.

16. As Kavanagh was on Level II monitoring at the time his name appeared on a civil service list of eligibles for promotion to the rank of Sergeant, he was required to appear before the CARB before he could be promoted to the rank of Sergeant.

17. On January 7, 2009, Kavanaugh appeared before Chief of Personnel Rafael Pineiro, Chief of Patrol Robert Giannelli, and Chief of Organized Crime Control Bureau, Anthony Izzo to determine his suitability for promotion. Based on a personal interview with Kavanaugh and a review of his employment record, the CARB voted unanimously to promote Police Office Kavanaugh to the rank of Sergeant. Copies of the Chiefs recommendations are annexed hereto as Exhibit B.

**B. Stephen Wheeler**

18. Police Officer Stephen Wheeler ("Wheeler") was a candidate on a promotional civil service list of eligibles for the rank of Sergeant from Examination Number 8564. He was assigned List Number 423 on that civil service list of eligibles.

19. A review of Wheeler's PMU file reveals that Wheeler was placed in Level III – Dismissal Probation on May 5, 2008 following his plea of guilty to one set of charges and specifications for driving under the influence while in Vermont. A copy of a memorandum

provided to the CARB in or about June 2011, which details Wheelers employment history is annexed hereto as Exhibit C.

20. Wheeler was placed on Level II monitoring on July 20, 2009 after completing dismissal probation. Wheeler completed Level II monitoring on January 24, 2011.

21. My review of Wheeler's file reveals that between his date of appointment on September 29, 2000 and his CARB interview on June 22, 2011, Wheeler recorded 47 arrests while averaging 3.42 non-line of duty sick per year and 0.28 line of duty sick days per year.

22. On June 22, 2011, Wheeler appeared before Chief of Personnel Thomas Dale, Chief of Patrol James Hall, and Chief of Organized Crime Control Bureau, Anthony Izzo to determine his suitability for promotion. Based on a personal interview with Wheeler and a review of his employment record, the CARB voted unanimously to promote Police Office Wheeler to the rank of Sergeant. Copies of the Chiefs recommendations are annexed hereto as Exhibit D.

### C. Claude Staten

23. Police Officer Claude Staten ("Plaintiff") was a candidate on a promotional civil service list of eligibles for the rank of Sergeant from Examination Number 8564. He was assigned List Number 244 on that civil service list of eligibles.

24. A review of Plaintiff's PMU file reveals that Plaintiff was placed in Level-II monitoring on February 23, 2007, following his receipt of one set departmental charges and specifications for failing to register two firearms, he inherited from his deceased father, with the NYPD. A copy of a memorandum provided to the CARB in or about April 2011, which details Plaintiff's employment history is annexed hereto as Exhibit E.

25. On October 15, 2009, while on Level- II Performance Monitoring, Plaintiff received a second set of charges and specifications following allegations that Plaintiff

- 5 -

had failed to properly turn in his summonses, failed to properly secure his departmental locker, and for reporting late to traffic court.

26. On October 8, 2010, while on Level -II Performance Monitoring, Plaintiff received a third set of charges and specifications for failing to notify the NYPD's Internal Affairs Bureau about a complaint of aggravated harassment Plaintiff filed with the Monticello Sheriff's Department.

27. My review of Plaintiff's file reveals that between his date of appointment on December 29, 1986 and his CARB interview on April 14, 2011, Plaintiff recorded 171 arrests while taking an average of 22.59 non-line of duty sick days per year and 13.25 line of duty sick days per year.

28. On April 14, 2011, Plaintiff appeared before Chief of Personnel Thomas Dale, Chief of Patrol James Hall, and Chief of Community Affairs Philip Banks to determine his suitability for promotion. Based on a personal interview with Plaintiff and a review of his employment record, the CARB voted unanimously to not promote Plaintiff to the rank of Sergeant, while recommending that Plaintiff be give a second CARB review in six months. Copies of the Chiefs recommendations are annexed hereto as Exhibit F.

29. On January 17, 2012, Plaintiff appeared before Chief of Patrol James Hall, Chief of Transit Bureau Joseph Fox, and Chief of Housing Bureau Joanne Jaffe to determine his suitability for promotion. Based on a personal interview with Plaintiff and a review of his employment record, the CARB voted unanimously to not promote Plaintiff to the rank of Sergeant, with no future appearance before the CARB. Copies of the Chiefs recommendations are annexed hereto as Exhibit G.

30. In his notes taken during the January 17, 2012 CARB interview Chief Fox wrote that Plaintiff did not "take any responsibility for past disciplinary issues," and "took no steps to improve on his performance since [the] last interview." *See* Exhibit G.

31. In her notes taken during the January 17, 2012 CARB interview Chief Jaffe wrote that Plaintiff "made no attempt to improve his enforcement efforts during the past 9-10 months since last boarded." *See* Exhibit G.

32. In his notes taken during the January 17, 2012 CARB interview Chief Hall wrote that "[t]his is the second time P.O. Staten has appeared before [the] CARB. The undersigned sat on the first CARB. P.O. Staten still fails to accept full responsibility for his disciplinary issues. He makes little contribution to the 46[th] [precinct]. His career sick record is poor. The [Commanding Officer] [of the] 46[th] [precinct] gave luke warm recommendation. I strongly believe that P.O. State does not have the skills to be a sergeant." *See* Exhibit G.

Executed on: New York, New York
January 31, 2014

_____
RICHARD D. GUBITOSI