POLICE DEPARTMENT
CITY OF NEW YORK

MEMORANDUM: CAREER ADVANCEMENT REVIEW BOARD

Subject: CANDIDATE FOR PROMOTION TO SERGEANT
POLICE OFFICER CLAUDE STATEN, TAX#
COMMAND: 46TH PRECINCT, EXAM #8564, LIST # 244

Appointed: December 29, 1986

Assignments:
| | | |
|---|---|---|
| December 29, 1986 | - | Police Academy |
| July 14, 1987 | - | 69th Precinct |
| July 20, 1987 | - | 66th Precinct |
| October 21, 1987 | - | 69th Precinct |
| May 16, 1988 | - | 60th Precinct |
| September 12, 1988 | - | 69th Precinct |
| May 8, 1989 | - | Harbor |
| December 12, 1989 | - | 69th Precinct |
| January 6, 1993 | - | 46th Precinct |

Department Recognition: 6 Excellent Police Duty
1 Meritorious Police Duty

Reasons for CARB

1. **CHARGES AND SPECIFICATION#2007-822**
Police Officer Claude Staten, tax# ▇▇▇▇ engaged in three separate incidents which were substantiated and resulted in charges and specifications. The cases were combined and negotiated for a penalty of thirty-five vacation days. The incidents are as follows.

On July 29, 2006, Anthony Staten called 911 to report a verbal dispute between his father, Police Officer Claude Staten, his mother, Mrs. ▇▇▇▇ and Ms. ▇▇▇▇

Deputy Davis, Sullivan County Sheriff's Department responded to the scene and was informed by Ms. ▇▇▇▇ that she was having an argument with Ms. ▇▇▇▇ Police Officer Staten's girlfriend over a videotape. Police Officer Staten was about to give the videotape to Ms. ▇▇▇▇ but Ms. ▇▇▇▇ protested, so he gave the tape to her instead.

D 000149

Ms. ███ further stated as she left the room she slammed the door on the safe causing the safe door to jam.

Deputy ███ looked at the safe and saw two firearms inside. Police Officer Staten told the Deputy Sherriff he inherited the guns from his deceased father and was attempting to fix the safe which was accidentally damaged. Deputy ███ vouchered the firearms for safekeeping.

The investigation revealed Police Officer Staten failed to register his father's firearms with the department. There was no misconduct regarding the dispute and therefore no duty status change.

2. **CHARGES AND SPECIFICATIONS#2009/823**
On June 3, 2008, while assigned as Lieutenant ███ ███ operator, Police Officer Staten issued two moving violation summonses to a female motorist for unlicensed operator and going through a steady red light. Upon completion of the tour, Police Officer Staten placed the summonses in his locker instead of the appropriate location.

On June 5, 2008, Police Officer Staten noticed the top copies of the summonses were missing and a note from Police Officer ███ the precinct delegate, was left inside his locker. The note stated the summonses were issued to a girlfriend of another member of the service.

Later during the tour, Lieutenant ███ saw the note on the summons and inquired about it. She also asked how Police Officer Lisa was able to enter the locker. Lieutenant ███ reported the incident to the Internal Affairs Bureau.

Police Officer ███ was officially interviewed. He stated he was able to go in Police Officer Staten's locker because it was not properly secured. He left the note on top of the summonses, but did not take the top copy of the summonses. Sergeant ███ the ICO, conducted an inspection of Police Officer Staten's locker and found the top copies of the summonses.

As a result of the internal investigation, Police Officer Staten's Traffic Court dates were closely monitored. On

December 11, 2008, he reported late to Traffic Court, and several cases were dismissed because he failed to testify. However, the person he issued the red light summonses to was not present and the court date was rescheduled. On the rescheduled court date Police Officer Staten gave insufficient testimony and the summonses were dismissed.

Police Officer Staten was found guilty of failing to properly turn in summonses, failing to properly secure his department locker, and reporting late to traffic court.

3. **CHARGES AND SPECIFICATION #2010-2362**
On July 24, 2009, Police Officer Staten filed a complaint report for aggravated harassment against his son ▇▇▇ ▇▇▇ with the Monticello Sheriff's Department and failed to notify the Internal Affairs Bureau.

On July 25, 2009, Sergeant Rivera, IAB, Group #21 received a called from Mr. ▇▇▇ ▇▇▇ who was lodging a complaint against his father, Police Officer Staten. ▇▇▇ ▇▇▇ alleged he had a verbal dispute with his father and his father robs drug dealers.

On July 11, 2010, Police Officer Staten was officially interviewed. He stated his son was upset because he was establishing a relationship with his granddaughter and was helping the child's mother financially. Police Officer Staten stated his son made the complaint in retaliation. Police Officer Staten also stated his son telephoned him and threatened to shoot him if he didn't stop interfering with his family.

**DISPOSITION: ALL THREE CASES WERE NEGOTIATED FOR 35 VACATION DAYS.**

4. **LEVEL II DISCIPLINE MONITORING:**
On February 23, 2007, Police Officer Staten was placed in Level II Discipline Monitoring. Police Officer Staten is schedule to complete monitoring on April 16, 2011. He received "competent" ratings on his quarterly discipline monitoring profiles.

| | |
|---|---|
| **Sick:** | Since **1986** Police Officer Staten has reported sick on **111** occasions for a total of **561** days of which **12** times have been designated as line of duty for a total of **329** days. He averages **22.59** days per year non-line of duty and **13.25** days line of duty per year. |
| **Performance Evaluations:** | Annual 2008 - Highly Competent<br>Annual 2009 - Highly Competent<br>Annual 2010 - Competent |
| **Education:** | Eligible |
| **Total Arrests:** | 171 |
| **Disciplinary Record:** | See Attached. |