UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

CLAUDE STATEN,

                        Plaintiff,

        - against -

THE CITY OF NEW YORK,

                       Defendant.

----------------------------------------------------------------x

**OPINION AND ORDER**

12 CIV. 3544 (ER)

Ramos, D.J.:

       Plaintiff Claude Staten ("Plaintiff"), appearing *pro se*, brings this action pursuant to 42 U.S.C. §§ 1981 and 1983 ("Section 1981" and "Section 1983"), the New York State Human Rights Law, New York Executive Law §§ 290, *et seq.* ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code §§ 8-101, *et seq.* ("NYCHRL"), alleging that the City of New York (the "City" or "Defendant") violated his civil rights.  Compl., Doc. 1.  Plaintiff is a Black-Hispanic police officer who has been employed by the New York City Police Department ("N.Y.P.D.") for more than two decades.  Plaintiff claims, *inter alia*, that on account of his race, the N.Y.P.D. has failed to promote him or grant him any awards, even though he deserves "department recognition."  *See* Compl.; Pl.'s Opp. 3, 7, 10, Doc. 33.

       Defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Doc. 24.  For the reasons discussed below, Defendant's motion is GRANTED.

**I.    Factual Background**

       The following facts are undisputed except where otherwise noted.[1]

---

[1] Under Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1"), a party moving for summary judgment pursuant to Rule 56 must submit a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local R. 56.1(a).  Each statement must be accompanied by a citation

Plaintiff self-identifies as Black-Hispanic.  Def.'s R. 56.1 Stmt. ¶ 2, Doc. 25.  He began

working for the N.Y.P.D. in December 1986.  *Id.* ¶ 3.

Following an internal investigation, on July 13, 1990, the N.Y.P.D. substantiated an

allegation that Plaintiff assaulted his common law wife.  *Id.* ¶ 6.  Plaintiff does not deny that the

N.Y.P.D. made this finding against him, but rather, asserts that the common law wife in

question,[2] Charmain Russell, was to blame; he characterizes her as "extremely violent" and

"dishonest," and states that she "would often call the police to give the impression that she was a

battered woman."  Pl.'s Opp. 5.  He also notes that his own son, Claude A. Staten, Jr., "exhibits

these same type [sic] of violent traits that his mother Charmain Russell possesses."  *Id.*

On August 21, 1991, the N.Y.P.D. partially substantiated an allegation that, during a trip

to the emergency room to treat wounds that he suffered on the job, Plaintiff "exercised poor

judgment" by pulling out his weapon and chasing a suspect around the emergency room.  Def.'s

56.1 Stmt. ¶ 8.  In his Opposition, Plaintiff describes the incident unfolding as follows:  he

encountered the suspect during an attempted robbery and felony assault, then the suspect struck

---

to admissible evidence.  Local R. 56.1(d); *see also* Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record to support or controvert a purported material fact).  If the moving party seeks summary judgment against a *pro se* litigant, it is also required to notify the *pro se* litigant of the requirements of Rule 56 and Local Rule 56.1.  Local R. 56.2.

Defendant submitted a proper Local Rule 56.1 Statement and provided Plaintiff with notice, pursuant to Local Rule 56.2, of the potential consequences of not responding to the motion.  Docs. 24-26.  However, Plaintiff failed to submit a response to Defendant's Local Rule 56.1 Statement or a counterstatement of his own; though his opposition contains numbered paragraphs that resemble factual assertions, it largely includes his unsworn statements and argument, rather than citation to the record.  As such, the Court may, but is not required to, conduct an independent review of the record.  *See, e.g.*, *Carbone v. Cnty. of Suffolk*, No. 10 Civ. 3631 (SJF) (AKT), 2013 WL 1386251, at *5 (E.D.N.Y. Apr. 2, 2013) (discussing that "[w]hile the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion, it is not required to consider what the parties fail to point out."  (quoting *Monahan v. N.Y.C. Dept. of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000))).

[2] The two have since married and divorced.  Pl.'s Opp. 5.

2

him in the face with a metal pipe and fled the scene, necessitating the emergency room visit. Pl.'s Opp. 6. While at the emergency room, Plaintiff spotted the suspect: "not knowing whether the suspect was still armed with a weapon," and because the suspect had "displayed that he [was] both a criminal and violent," Plaintiff "drew [his] handgun to prevent further assault," pursued the fleeing suspect and effected an arrest. *Id.* Plaintiff notes that he effected the arrest in the emergency room without causing anyone additional injury, thus claims that he "qualified for, and should have received, department recognition" for this conduct, rather than reprimand. *Id.* at 7.[3]

On March 19, 1992, the N.Y.P.D. served Plaintiff with disciplinary charges for having been absent from his residence "without the permission of the district surgeon and for having failed to notify his Commanding Officer of his change in Name/Residence/Social Condition." Def.'s 56.1 Stmt. ¶ 9. In connection with those charges, Plaintiff agreed to forfeit ten vacation days as part of a negotiated settlement. *Id.* ¶ 10.

The N.Y.P.D. designates an officer "Chronic Sick – A" if he reports sick for any reason, except an initial line of duty absence or hospitalization, on four or more occasions in a twelve-month period. *Id.* ¶ 5. Between December 9, 1989 and July 27, 2002, Plaintiff received numerous citations for "excessive sick days." *Id.* ¶¶ 4, 7-29. Richard D. Gubitosi ("Gubitosi"), Commanding Officer of the N.Y.P.D.'s Performance Analysis Section, submitted a declaration attesting that, between his appointment in December 1986 and April 2011, Plaintiff reported sick 111 times, for a total of 561 days. Gubitosi Decl. ¶ 27, Doc. 27. Plaintiff does not appear to

---

[3] Plaintiff further claims that he should have been awarded department recognition, like "other Caucasian members of the 046 precinct," for shooting incidents in 1996 and 2000, such as "medal awards given by the mayor and the police commissioner." Pl.'s Opp. 8. Plaintiff formally submitted two requests for department recognition for each incident, but "did not receive any." *Id.* at 7-8.

3

contest these facts, but claims that he "has not been designated chronic sick" since July 27, 2002. Pl.'s Opp. 4.

Additionally, N.Y.P.D. Officers may be placed on "performance monitoring" based on their employment histories, ranging from Level I (the lowest) to Level III (the highest).  Def.'s 56.1 Stmt. ¶ 34.  Officers placed on Level II or Level III monitoring may not be promoted without first appearing before the Career Advancement Review Board ("CARB"), which consists of a panel of N.Y.P.D. Chiefs tasked with assessing the merit of their application for promotion. *Id.* ¶ 35.  Due to the fact that he received three civilian complaints over the course of a year, Plaintiff was placed on Level I monitoring effective February 23, 2007.  *Id.* ¶ 36.  Less than two months later, Deputy Inspector Donna G. Jones made a determination that Plaintiff persisted in engaging in "troubling behavior," and thus placed him on Level II monitoring effective March 5, 2007.  *Id.* ¶¶ 38-39.  In a letter dated March 5, 2007, the N.Y.P.D. informed Plaintiff that "continued accrual of force complaints or negative performance according to Police Department standards … may have a negative effect on [your] career potential."  *Id.* ¶ 40.

During Level II monitoring, Plaintiff was served with departmental charges in 2007 for failing to register two firearms with the N.Y.P.D., as required by regulations, as well as charges in 2009 and 2010 for "failing to report that he had filed a complaint of aggravated harassment," failing to "properly turn in summonses [or] … secure his department locker," and failing to timely report to traffic court. *Id.* ¶¶ 41-43.  As part of a negotiated settlement, Plaintiff pleaded guilty to all of the departmental charges filed against him from 2007 to 2010 and forfeited thirty-five vacation days. *Id.* ¶ 44.  He nonetheless claims that, with respect to the charges concerning his locker and the summonses, another officer, James Lisa, was to blame; according to Plaintiff, an investigation revealed that the lock securing his locker was not defective, and that he secured

4

his locker properly; Officer Lisa improperly removed the summonses from Plaintiff's locker despite Plaintiff's efforts.  Pl.'s Opp. 8-9.

Because of the Level II monitoring, Plaintiff was required to appear before CARB prior to receiving a promotion.  Def.'s 56.1 Stmt. ¶ 49.  Plaintiff's commanding officers and supervisors consistently recommended that he not be promoted based upon his "terrible" sick record (*id.* ¶ 52), lack of ability to inspire others to work (*id.* ¶ 54), "poor disciplinary history, excessive sick record and the lack of performance activity" (*id.* ¶ 55), his failure to "take any responsibility for [his] past disciplinary issues" (*id.* ¶ 59), and "luke warm" recommendations from his own precinct (*id.* ¶ 61), including a notation that he made "little contribution" to his own precinct (*id.*).  Nor does Plaintiff appear to contest the fact that he averaged only seven arrests per year between December 1986 and April 2011.  *Id.* ¶ 46.  Defendant has submitted evidence that, on April 14, 2011 and January 17, 2012, Plaintiff appeared before CARB to determine his suitability for promotion to Sergeant.  *Id.* ¶¶ 50-51, 58, 62.  On both occasions, CARB "voted unanimously not to promote Plaintiff" (*id.*), and former Police Commissioner Raymond W. Kelly approved the First Deputy Commissioner's recommendations not to promote Plaintiff.  *Id.* ¶¶ 57, 63.

Plaintiff asserts that the City has violated his civil rights because even though he took, and passed, the examination for promotion to the rank of Sergeant (the "Sergeant Exam") numerous times, the N.Y.P.D. has never promoted him during the last twenty-one years.  Pl.'s Opp. 2-3.  At his deposition, Plaintiff testified that he could "only fathom and guess" what "the exact bias is" against him, "[b]ut [he] know[s] that it's bias" because the N.Y.P.D. "[is] looking to destroy me."  Clark Decl. Ex. H (Staten Dep. 87:1 – 87:25), Doc. 28.  Staten testified that because "nothing [he's] done within [his] job description, or … off-duty … would prevent [him]

from being promoted," then "obviously something biased [sic]" is responsible for the N.Y.P.D.'s failure to promote him; "if it's not directly my race, it might be something else.  But they don't like me.  And their dislike towards me is why they're doing this to me."  Clark Decl. Ex. H (Staten Dep. 152:1 – 152:25).[4]

Plaintiff filed the instant action on May 3, 2012.  The Complaint raises disparate treatment claims against the City pursuant to Sections 1981 and 1983, the NYSHRL and the NYCHRL.  Although Plaintiff had an attorney at the time he initiated this case, his counsel moved to withdraw from the representation, and the Honorable Colleen McMahon granted that motion on February 1, 2013.  *See* Docs. 9-12.  On July 17, 2013, the case was transferred to the undersigned.

Defendant moves for summary judgment on the grounds that (1) Plaintiff has failed to adduce any evidence of a *Monell* claim; (2) Plaintiff has failed to establish a *prima facie* case of disparate treatment; (3) Defendant had legitimate, non-discriminatory reasons for failing to promote Plaintiff; and (4) there is not any evidence in the record suggesting that Plaintiff was treated "less well" on account of his race.  Def. Mem. 1-16, Doc. 29.  In response, and without

---

[4] Although Plaintiff mentions two alleged comparators, Officer Kevin Kavanagh ("Kavanagh") and Officer Stephen Wheeler ("Wheeler"), in his Complaint, he fails to contest any of the evidence adduced by Defendant concerning the bases for their promotions, and indeed, does not even mention them in his Opposition.  Moreover, at his deposition, Plaintiff conceded that he lacked any personal knowledge of Kavanagh.  He testified "I don't know who [Kavanagh] is," "if it's in my Complaint, then I've read [about Kavanagh]," but "I don't know who he is, per se," "I don't know when he was promoted," "I believe" that he is a Caucasian male because "that is what the Complaint states," but "I've never seen him before.  I just know what it states in the Complaint."  Ultimately, Plaintiff confessed that he learned about Kavanagh from an attorney, and "[t]hat [allegation] wasn't [based on] my personal knowledge."  Clark Decl. Ex. H (Staten Dep. 78:22 – 80:25).  Similarly, while Plaintiff testified that he worked in the same precinct as Wheeler, he has not contested Defendant's evidence that Wheeler had a different track record than Plaintiff:  the N.Y.P.D. placed Wheeler on Level III monitoring in 2008 because he pleaded guilty to a drunk driving offense, and over the course of the next three years, Wheeler completed the terms of his probation, effected 47 arrests in a year, and averaged less than four total sick days—including line and non-line days—per year.  Def.'s 56.1 Stmt. ¶¶ 69-73.  He received a promotion to Sergeant after appearing before CARB on June 22, 2011.  *Id.* ¶ 72.

citing any evidence in the record, Plaintiff argues that the N.Y.P.D. has been "using lies and deceit" to justify its failure to promote him, and that he is "treated unequally and different, due to [his] race." Pl.'s Opp. 10 ¶ 84.

## II.    Legal Standard on Motion for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.*

The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the burden of proof at trial would fall on the movant, that party's "own submissions in support of the motion must entitle it to judgment as a matter of law." *Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612, 618 (2d Cir. 1998). Conversely, "[w]hen the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex Corp.*, 477 U.S. at 322-23). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex Corp.*, 477 U.S. at 322-23).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)) (internal quotation marks omitted). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (internal quotation mark omitted). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).

The Second Circuit has made clear that "special solicitude should be afforded *pro se* litigants generally, when confronted with motions for summary judgment." *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) (citing *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). *Pro se* litigants' submissions are "held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Young v. N.Y.C. Dep't of Educ.*, No. 09 Civ. 6621, 2010 WL 2776835, at *5 (S.D.N.Y. July 13, 2010) (noting that the same principles apply to briefs and opposition papers filed by *pro se* litigants). Although "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law,'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*,

8

710 F.2d 90, 95 (2d Cir. 1983)), courts read the pleadings and opposition papers submitted by *pro se* litigants "liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).  "However, a *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment."  *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## III.    Discussion

### A.  Defendant Is Granted Summary Judgment on Plaintiff's Section 1981 and Section 1983 Claims

Section 1981 bars racial discrimination in contractual relationships, including employment.  42 U.S.C. § 1981 ("[a]ll persons ... shall have the same right ... to make and enforce contracts ... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens."); *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 68 (2d Cir. 2000).  Section 1983 provides redress for (1) deprivations of a plaintiff's federally protected rights (2) committed by defendants acting under color of state law.  *See, e.g.*, *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002) (per curiam).

Here, Plaintiff has solely sued a municipal entity.  A Section 1981 or 1983 claim against a municipality can only be sustained if the allegedly unconstitutional action resulted from an official policy or custom.  *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690–94 (1978) (municipalities constitute "persons" for the purpose of Section 1983 claims "where ... the action that is alleged to be unconstitutional implements or executes a policy statement,

ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers."); *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735-36 (1989) (addressing Section 1981).  Thus, to prevail here, Staten must establish that such a municipal policy or custom is responsible for his injury.  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997), *reh'g denied*, 520 U.S. 1283 (1997).

Second Circuit courts utilize a two-step approach when analyzing municipal liability. First, the plaintiff must prove "'the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving [official].'"  *Johnson v. City of New York*, No. 06 Civ. 09426 (GBD), 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (quoting *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)).  Second, the plaintiff must establish a causal connection between the policy or custom and the alleged deprivation of his constitutional rights.  *Id.*  A plaintiff need not identify an express rule or regulation in order to establish the existence of a policy.  "It is sufficient to show that the discriminatory practices are so persistent and widespread ... as to constitute a custom or usage with the force of law or that a discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials." *Lang v. New York City Health & Hospitals Corp.*, No. 12 Civ. 5523 (WHP), 2013 WL 4774751, at *4 (S.D.N.Y. Sept. 5, 2013) (internal quotation marks omitted) (citing *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 870–71 (2d Cir. 1992)).

However, "[c]onclusory allegations of municipal liability will not defeat a motion for summary judgment on a *Monell* claim."  *Jouthe v. City of New York*, No. 05 Civ. 1374 (NGG) (VVP), 2009 WL 701110, at *8 (E.D.N.Y. Mar. 10, 2009) (alteration in original) (citations omitted).  "The mere assertion ... that a municipality has such a custom or policy is insufficient

10

in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intell. & Coord. Unit*, 507 U.S. 163 (1993); *accord Lowery v. City of New York*, No. 10 Civ. 7284 (KBF), 2014 WL 2567104, at *6 n.12 (S.D.N.Y. June 6, 2014).

Here, even if Plaintiff demonstrated that his constitutional rights were violated, his claims necessarily fail because he has failed to furnish any evidence, "other than mere assertions," that actions were taken against him in accordance with or pursuant to a policy or custom of the City. *Guentangue v. City of New York*, No. 09 Civ. 7369 (DAB) (GWG), 2011 WL 3586121, at *4 (S.D.N.Y. Aug. 10, 2011), *report and recommendation adopted sub nom.*, *Guentague v. City of New York*, No. 09 Civ. 7369 (DAB), 2011 WL 4069558 (S.D.N.Y. Sept. 13, 2011).  The Complaint's sole allegation of a practice or custom is that the City uses the N.Y.P.D.'s performance monitoring program "in toto" "to illegal[ly] track and impede African American and other officers of color [from] employment opportunities."  Compl. ¶ 18.  In its opening brief, Defendant argued that there is no evidence demonstrating that the City committed a *Monell* violation, *see* Def. Mem. 15-16, and further, in its reply, that Plaintiff *abandoned* his Section 1981 and 1983 claims because he "failed to respond[] to Defendant's argument that Plaintiff cannot and has not established that the alleged discriminatory treatment … occurred pursuant to a municipal policy or custom."  Def.'s Reply Br. 3, Doc. 31.

"[W]here a nonmoving party bears the burden of proof on an issue, it is sufficient for the party moving for summary judgment to 'point [ ] out to the district court ... that there is an absence of evidence to support the nonmoving party's case.'"  *Feurtado v. City of New York*, 337 F. Supp. 2d 593, 598-99 (S.D.N.Y. 2004) (quoting *Celotex Corp.*, 477 U.S. at 325).  Indeed,

even where the moving party does not cite any supporting evidence, if the non-movant bears the ultimate burden of proof on an issue, where, as here, the movant's opening summary judgment brief "point[s] out … the absence of evidence," *Celotex Corp.*, 477 U.S. at 325, the *non-movant* has an obligation to come forward with admissible evidence supporting his claim. *Feurtado*, 337 F. Supp. 2d at 599 (citing, *e.g.*, *Webster v. City of New York*, 333 F. Supp. 2d 184, 206 (S.D.N.Y. 2004) (a movant's "conclusory assertion … that plaintiffs have no evidence to prove their case" is sufficient to require plaintiffs to provide evidence of a *Monell* violation in order to survive summary judgment); *see also Miner v. City of Glens Falls*, 999 F.2d 655, 660 (2d Cir. 1993) (plaintiff bears burden of proof in section 1983 action).

While Plaintiff argues, in his opposition brief, that "[i]t is inconceivable to believe that I have not been a victim of wrong doing [sic], or even racism within the police department," he failed to submit any evidence whatsoever of a discriminatory policy or custom, and the Court's independent review of the record reveals none.  Plaintiff's theory that the City targeted him due to his race is based on mere conjecture, and as a matter of law, his speculative and conclusory allegations are insufficient to support a claim of municipal liability.  *Feurtado*, 337 F. Supp. 2d at 598–600; *see also, e.g.*, *Guentangue*, 2011 WL 3586121, at *4 (dismissing *pro se* plaintiff's claims against city on summary judgment where plaintiff failed to "identif[y] in what way the City's training [was] insufficient, let alone provide[] any evidence that tends to support his allegation [of municipal liability]") (collecting cases); *Alexander v. City of Syracuse*, 454 F. App'x 6, 9 (2d Cir. 2011) (summary order) (concluding that district court properly dismissed *pro se* plaintiff's claim against the city where there was no evidence that plaintiff was wrongfully detained pursuant to a municipal policy or custom); *Harris v. Bowden*, 349 F. App'x 601, 603 (2d Cir. 2009) (summary order) (deeming dismissal of *pro se* plaintiff's claims against city

warranted where he failed to adduce any evidence of a policy or custom of denying medical treatment or not addressing inmate grievances); *Jouthe*, 2009 WL 701110, at * 8 (granting summary judgment for city where plaintiffs failed to provide any evidence in support of their allegations that city employees acted pursuant to municipal custom or policy and that the city failed to adequately train its employees).[5]

Accordingly, the Court GRANTS Defendant's motion for summary judgment on Plaintiff's Section 1981 and 1983 claims.

### B.  State Law Claims

Because the Court has granted summary judgment to Defendant for all claims over which it has original jurisdiction, it declines to exercise pendent jurisdiction over Plaintiff's remaining NYSHRL and NYCHRL claims.  28 U.S.C. § 1367(b)(3).

## IV.  Conclusion

For the reasons set forth above, Defendant's motion for summary judgment is GRANTED.  The Clerk of the Court is respectfully directed to terminate the pending motion (Doc. 24) and to close the case.

It is SO ORDERED.

Dated:     August 7, 2014
           New York, New York

                                        Edgardo Ramos, U.S.D.J.

---

[5] Moreover, to the extent that Plaintiff attempts to bring a "class of one" claim under the Fourteenth Amendment, his claims fail because they occurred in the context of public employment with the N.Y.P.D.  *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 605, 609 (2008) ("ratifying a class-of-one theory of equal protection in the context of public employment would impermissibly 'constitutionalize the employee grievance.'" (citation omitted)).